# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MACKENZIE GUEST,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **NO. 10-5288** |
| | : | |
| **OAK LEAF OUTDOORS, INC., et al.,** | : | |
| **Defendants.** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                   **April 30, 2012**

Joseph Guest fell from a tree while hunting.  He was using a Lone Wolf Sit and Climb Treestand, manufactured by Oak Leaf Outdoors, Inc., and sold by Gander Mountain, Inc.  After the accident, Mr. Guest died from injuries he sustained in a car accident completely unrelated to this action.  Mackenzie Guest was substituted as the plaintiff because she is the Administratrix for the Estate of Joseph Guest.  Plaintiff's complaint asserts causes of action for defective design and negligence.[1]  The defendants filed a motion for summary judgment on the threshold issue of whether the plaintiff is able to prove causation under the theories of negligence and strict liability.  For the following reasons, I will deny the defendants' motion for summary judgment on Counts I, II and V.

---

[1] As a result of the unavailability of Joseph Guest as the witness regarding the defective warnings he received from the Defendants, the plaintiff concedes that she can no longer maintain an action under the two failure to warn, strict liability counts.  (Doc. No. 31, at 2.)  Accordingly. Counts III & IV are dismissed.

## I.    BACKGROUND[2]

### A.    The Incident at the Tree

On November 25, 2009, Mr. Guest was using a Lone Wolf Sit and Climb Treestand to climb a tree while hunting.  (Compl. at ¶ 18.)  Plaintiff's Complaint alleges that the tree stand's cam lever (that locks the seat platform belt) unintentionally came open and released the traction belt, causing the seat platform to collapse and Mr. Guest to fall onto the tree stand's foot platform.  (Compl. at ¶¶ 16-18.)  Plaintiff alleges that the force of this fall and Mr. Guest's weight on the foot platform caused the traction belt to break.  (Complaint at ¶ 18.)  When the traction belt broke, Mr. Guest fell from the tree. (Id.)

### B.    Joseph Guest's Statement to Officer Eno

The only testimony in the record comes from the deposition of Officer Thomas Eno.  (Doc. No. 28[3], ¶ 24, Doc. No. 30, ¶ 24[4].)  After Mr. Guest's fall, he retrieved his cell phone that was lying on the ground nearby.  He dialed 9-1-1.  The dispatcher received the phone call at 6:20 a.m.  (Eno Dep. at 28:13-28:16.)  Officer Eno responded to the emergency dispatcher's call to assist Guest and arrived on the scene at 6:26 a.m. (Eno Dep. 28:20-28:21.)   Mr. Guest signaled the police officer with his cell phone and voice from his location on the wooded property.  Officer Eno left his vehicle and ran through the woods to Mr. Guest's location.  (Eno Dep. 14:2-14:12.)

---

[2] Under Rule 56 of the Federal Rules of Civil Procedure, I must draw "all justifiable inferences" in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

[3] Defendants' Motion for Summary Judgment.

[4] Plaintiff's Response to the Defendants' Motion for Summary Judgment.

At his deposition, Officer Eno described Mr. Guest's state of mind at the scene of the fall:

> Q:     What was his state of mind when you got there?  Was he, you know, a wild man screaming at the top of his lungs or was he --?
>
> A:     No.
>
> Q:     -- a pretty calm --
>
> A:     No.
>
> Q.     -- cool --
>
> A:     No.  He was calm, but in pain.

(Eno Dep. 36:22-37:7.)

The deposition transcript of Officer Eno reveals that Mr. Guest did not make any statements to Officer Eno that specified why the tree stand fell from the tree:

> Q:     Did he tell you what happened?
>
> A:     He said he was hunting. And then all of a sudden, he said the tree stand gave out from underneath him.  And he said he didn't remember -- I believe he said scratch that -- I believe he said he didn't remember what happened.

(Eno Dep. 17:10-17:16.)

> Q:     Did he make any other statements to you that you recall?
>
> A:     He said thank God his cell phone fell close to him as well, and he was able to reach over and grab his cell phone.

(Eno Dep. 17:19-17:24.)

Q:     What did you do at that point?

A:     I tried to discern what type of injuries he had, asking him where the pain was coming from.  He said his lower back, and he thinks he may have hit his head on the way down.  That's how he split his lip, in other words, on a branch.

(Eno Dep. 16:22-17:5.)

Q:     . . . What was the next thing that happened?

A:     The ambulance personnel came, and they basically took over from there.  They got him on the backboard and were able to make their way back to the ambulance.

(Eno Dep. 18:5-18:9.)

Q:     Other than the one statement you gave us, do you recall any other statements that Mr. Guest said while he was there?

A:     No.

(Eno Dep. 36:6-36:10.)

Q:     Did you ever ask Mr. Guest what caused him to fall?

A:     Yes, I did.  I asked him how did he fall, what happened.  And he said, the tree stand just gave out from under me.  And he said, I don't remember.  I may have hit my head on the way down.

Q:     Did he tell you why the tree stand gave out from underneath him?

A:     No.

(Eno Dep. 41:14-42:2.)

.

### C.    Norman W. Johanson Expert Report

Plaintiff retained Norman W. Johanson to determine if the Lone Wolf treestand was defective in a manner that caused Mr. Guest's injury.  (Doc. No. 27-1, Exhibit F.) Johanson prepared a report and concluded that the subject tree stand manufactured and sold by the defendants was defective and caused Mr. Guest's fall.  His report states that "Guest fell and was injured when one end of a Lone Wolf 'Sit and Climb' tree stand's upper platform traction belt suddenly released, causing Guest to fall onto the tree stand's foot platform section.  When he landed on the foot platform the traction belt on that section broke.  Guest and the two tree stand sections fell to the ground."  (Id. at 1.)

### D.    Unrelated Death

On February 22, 2011, Mr. Guest died as a result of injuries sustained in a car accident wholly unrelated to this action.  (Doc. No. 19.)  Thereafter, Mackenzie Guest was substituted as the plaintiff by Order of this Court.  (Doc. No. 21.)


## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is "material" only if the factual dispute might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   An issue is "genuine" when a reasonable fact-finder may be able to return a verdict in favor of the non-moving party.  Id.

The party moving for summary judgment always bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.  FED. R. CIV. P. 56(c).  Summary judgment is therefore only appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

Under Rule 56 of the Federal Rules of Civil Procedure, the Court must draw "all justifiable inferences" in favor of the non-moving party.  Anderson, 477 U.S. at 255.  The Court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  Id. at 252.  The nonmoving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present clear evidence from which a jury can reasonably find in its favor. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999).  Finally, in reviewing a motion for summary judgment, the Court does not make credibility

determinations and must view facts and inferences in the light most favorable to the party opposing the motion.  Siegel Transfer v. Carrier Express, 54 F.3d 1125, 1127 (3d Cir. 1995).

## III.    DISCUSSION

Defendants move for summary judgment on Counts I, II and V on the ground that there is insufficient evidence to establish a causal link between Guest's alleged injury and the subject tree stand manufactured by the defendants.  To prevail on Count V, negligence, the plaintiff must establish (1) a duty, (2) a breach of that duty, (3) *the causal relationship between the breach and the resulting injury*, and (4) an actual loss or damage.  Paley v. Chanoff & Trommer, Inc., 1993 U.S. Dist. LEXIS 10674 (1993)(emphasis added)(citing  Casey v. Geiger, 346 Pa. Super. 279, 499 A.2d 606, 612 (Pa. Super. Ct. 1985)).  To prevail on her product liability claims, Counts I and II, the plaintiff must prove the defendant designed, manufactured, and sold a "product in a defective condition unreasonably dangerous to the user or consumer or to his property." Id.  Plaintiff must also prove a causal relationship between the defendant's product and the plaintiff's injury.  Burton v. Danek Med., Inc., 1999 U.S. Dist. LEXIS 2619, 6-7 (E.D. Pa. 1999).

Specifically, defendants contend that there is no hearsay exception under which any statement made to Officer Eno or to the plaintiff's expert may be admitted at trial, and therefore, defendants maintain that there is insufficient evidence to establish a causal link between plaintiff's injury and the defendants' product.  Plaintiff argues that the

statements made to Officer Eno are admissible under Fed. R. Evid. 803(2) and 803(4) and thus there is sufficient direct evidence of causation to survive the motion for summary judgment.  In the alternative, the plaintiff argues that even if the statements are not admissible, there is enough circumstantial evidence to establish that Joseph Guest's fall was caused by a defective Lone Wolf tree stand.

### A.      Mr. Guest's Statements to Officer Eno

Under the Federal Rules of Evidence, hearsay is not admissible except as provided by the rules.  FED. R. EVID. 802.  Hearsay is a statement offered in evidence to prove the truth of the matter asserted in the statement.  FED. R. EVID. 801(c).  Plaintiff argues two hearsay exceptions, excited utterance and statements made for purposes of medical diagnosis, are applicable pursuant to FED. R. EVID. 803.

### 1.      <u>Mr. Guest's Statements are not Admissible Under the Excited Utterance Exception to the Hearsay Rule.</u>

Plaintiff contends that the statements that Mr. Guest made to Officer Eno are admissible under Fed. R. Evid. 803(2), the hearsay exception for an "excited utterance." An excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement caused by the event or condition." FED. R. EVID. 803(2).  A statement qualifies as an excited utterance if the following four conditions are satisfied: "(i) a startling occasion; (ii) a statement relating to the circumstances of the startling occasion; (iii) a declarant who appears to have had opportunity to observe personally the events; and (iv) a statement made before there has

been time to reflect and fabricate." United States v. Brown, 254 F.3d 454, 458 (3d Cir.

2001).

Here, the startling occasion occurred when Mr. Guest and the tree stand fell to the

ground.  Mr. Guest experienced the event, personally, and made a statement surrounding

the circumstances of the startling occasion.  Mr. Guest's statement was not, however,

made before there was time to reflect or fabricate.  Several minutes, at least six, passed

from the time of the startling event to the time the statement was made to Officer Eno.

Mr. Guest had to (1) retrieve his cell phone, (2) Dial 9-1-1, (3) wait for the arrival of

Officer Eno, (4) signal the police officer with his cell phone from his location on the

wooded property, and (5) wait for officer to leave his vehicle and run to Guest's location.

Exactly six minutes elapsed between the time the dispatcher received the phone call and

the time Officer Eno arrived on the scene.  An additional, unknown amount of time also

passed after the fall but before the phone call was made and after Officer Eno arrived but

before the statement was made.  Accordingly, Mr. Guest's statement to Officer Eno lacks

immediacy because the temporal gap of more than six minutes was sufficient to give the

declarant time to reflect and possibly fabricate his statement to the Officer.  See United

States v. Brown, 254 F.3d 454, 460 (3d Cir. 2005) (admitting statement where temporal

gap was "only a matter of one or a few minutes).   Additionally, the declarant was not

acting under the requisite stress of perceiving the event because Officer Eno described

Mr. Guest as calm, but in pain.  Therefore, I find that the statement to Officer Eno was

not an "excited utterance."

2. <u>**Mr. Guest's Statements are Partially Admissible as Statements**</u>
<u>**for Purposes of Medical Diagnosis or Treatment.**</u>

Plaintiff next argues that the statements Mr. Guest made to Officer Eno regarding how the fall occurred are admissible as statements for the purpose of medical diagnosis or treatment.  Fed. R. Evid. 803(4) provides that "statements for purposes of medical diagnosis or treatment" are not excluded by the hearsay rule, even though the declarant is available as a witness, when those statements are "made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."  These statements are regarded as inherently reliable because of the recognition that one seeking medical treatment is keenly aware of the necessity for being truthful in order to secure proper care.  <u>See</u> FED. R. EVID. 803(4) advisory committee's notes.

Plaintiff only asks the Court to admit the statement where Mr. Guest told Officer Eno that the pain was coming from "his lower back and he thinks he may have hit his head." (Eno Dep. 17:2-17:9, Plaintiff's Response at 10.)  Officer Eno testified that he was attempting to discern exactly what type of injuries Mr. Guest had and where the pain was coming from when he elicited this statement.  This statement is admissible under Fed. R. Evid. 803(4).  Any other statements made to Officer Eno are not relevant to any diagnosis of Mr. Guest's injuries.

**B.     Circumstantial Evidence of Causation**

Plaintiff maintains the circumstantial evidence on record establishes that Mr. Guest's fall was caused by a defective Lone Wolf tree stand. The defendant argues that because there were no witnesses to Mr. Guest's fall, the plaintiff cannot establish that Mr. Guest's fall was caused by the defective Lone Wolf tree stand. Causation may be shown by process of elimination or circumstantial evidence. In cases dealing with product malfunction, for instance, Pennsylvania appellate courts have consistently reversed trial courts for not sending to the jury cases in which causation had not been directly demonstrated. See Parks v. AlliedSignal, Inc., 113 F.3d 1327 (3d Cir. 1997)(citing Ducko v. Chrysler Motors Corp., 639 A.2d 1204 (Pa. Super. Ct. 1994); Agostino v. Rockwell Mfg. Corp., 345 A.2d 735 (Pa. Super. Ct. 1975); Burchill v. Kearney-Nat'l Corp. v. Pennsylvania, 468 F.2d 384 (3d Cir. 1972)).

There is sufficient circumstantial evidence on record to establish a causal relationship. Officer Eno testified that he responded to a 9-1-1 call and found Mr. Guest lying on his back in the woods at the base of a tree. He was dressed in camouflage hunting clothing and the Officer observed a backpack and a crossbow lying on the ground near him. Officer Eno testified that he found the Lone Wolf tree stand on the ground at the base of the tree. When he inspected the bottom section of the tree stand and the standing platform, he observed that the bottom belt that secures the stand to the tree was broken. The top belt appeared to have come undone. Officer Eno observed broken branches in the tree that indicated to him from where Mr. Guest had fallen.

Officer Eno also observed Mr. Guest and his injuries.  He estimated that Mr. Guest weighed less than 200 pounds, substantially less than the 350-pound weight limit for the Lone Wolf tree stand.  He also observed that Mr. Guest was in pain and had injuries to his back and head, consistent with a fall.

This circumstantial evidence points to a possible conclusion that the bottom tree stand belt broke and caused Mr. Guest to fall to the ground.  The defendants even acknowledge that the issue of causation is a question for the jury, stating, "it is clear that a jury *could just as easily* infer that Mr. Guest was standing on a tree limb when it broke." (Doc. No. 33, at 2, emphasis added.)  Defendants argue that a prospective juror might believe that a myriad of circumstances could have caused the fall, unrelated to a defective tree stand.  (Doc. No. 27, at 2.)  However, there is sufficient circumstantial evidence at this stage to survive a motion for summary judgment because "a fair-minded jury could return a verdict for the plaintiff on the evidence presented."   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Additionally, the expert report of Norman Johanson corroborates evidence and supports the conclusion that the bottom tree stand belt broke.   Johanson examined the defective tree stand and found that the bottom break in the traction belt is consistent with the type of failure that would result from using the tree stand as recommended by the manufacturer.  Defendants argue that the expert does not cite facts and theories to support his opinion and his opinion lacks any foundation in fact.  The Johanson reports lists the information he examined, including the product line instructions and the subject Lone Wolf Sit and Climb Treestand.  (Doc. No. 27-1, Exh. F. at 2.)  His report links the factual

12

evidence he observed to his conclusion.  Mr. Johanson's report sets forth a factual basis to support his conclusion that the "forces transferred to the flexible 'traction belts' are not uniformly distributed" and thus, the "polyurethane traction belts were unsuitable for an application in which load was not applied in line with the tree stand attachment arms, and if used in such manner, belt strength would be reduced to a fraction of its in-line strength."  (Id. at 10.)

Defendants are correct that "[t]he sheer fact that an accident allegedly occurred does not mean that the Moving Defendants were at fault or the subject tree stand was defective."  (Doc. No. 27, at 6.)  Plaintiff has the burden at trial to establish a causal relationship between the defendants' product and the plaintiff's injury.  I decline to grant the defendants' motion for summary judgment and dismiss the case at this stage of the litigation because I find that a fair-minded jury could return a verdict for the plaintiff based on the circumstantial evidence on record coupled with the admissible statement of medical diagnosis made to Officer Eno.  Plaintiff will, however, have a taller tree to climb to meet her burden at trial.

## IV.     CONCLUSION

For the foregoing reasons, I will deny the defendants' motion for summary judgment on Counts I, II, and V.  The plaintiff concedes that Counts III and IV must be dismissed, accordingly, the Defendants' motion for summary judgment on Counts III and IV will be granted.

An appropriate Order follows.